[No. 29640. Department One. October 16, 1945.]

P. CHRISTOFERSEN, *Appellant*, v. NICK J. RADOVICH et al., *Respondents*.[1]

*Gates, Montgomery & Onstad*, for appellant.

*Jacob Kalina*, for respondents.

MALLERY, J.—The plaintiff brought this action to foreclose a labor and materialman's lien on the home of the

[1] Reported in 162 P. (2d) 830.

defendants. The defendants cross-complained. From a judgment in favor of the defendants on their cross-complaint, the plaintiff appeals.

Appellant's contentions were that he had agreed to furnish the labor and did furnish the labor in the construction of a dwelling for the respondents for twelve hundred dollars; that later he agreed to furnish the labor and did furnish the labor in framing the garage for fifty dollars; that he had furnished materials to the value of $57.55 for which he had not been paid; that of the $1,307.55 owing, he had been paid eight hundred dollars, and that there was a balance owing of $507.55.

From the record, it is not too clear what his exact position was as to the nature of the contract, that is, whether he agreed to furnish the labor for the flat sum of twelve hundred fifty dollars or that he was simply the boss carpenter in charge of the building with the right and obligation on the part of the respondents to hire the other labor. In any event, it appears that he selected the workmen and paid them for their services and received eight hundred dollars on account. He introduced his time book in evidence showing the number of days his men had worked. Although he did not have any record of his own time, he contended that he worked the same amount of time as his men and claimed for the union scale for boss carpenters, which is a dollar a day more than for regular carpenters. There is no dispute that he received only eight hundred dollars, and that he paid for the material as alleged.

The respondents contend that there was an oral contract for the construction of the dwelling by appellant, who was to furnish all the labor and materials for the agreed sum of fifty-three hundred dollars plus fifty dollars for his labor on the garage. They showed that they had paid in excess of the agreed price, the amount for which the court gave them judgment on their cross-complaint.

It appears that the respondents first contacted the appellant with regard to building a house in June, 1941. A number of conferences were held between the parties before construction began. The respondents did not have the

money with which to build. They were informed by appellant that they must first acquire a lot before they could secure an FHA loan. They proceeded to acquire the lot in question. The appellant told them he could build the house they wanted for fifty-five hundred dollars, but upon contacting FHA authorities, respondents were told that their monthly income entitled them to a loan of only five thousand dollars. Further investigation was made, and the respondents discovered that certain savings could be made in the purchase of the furnace and in the bulldozing work, which would bring the cost of the house down to fifty-three hundred dollars. Whereupon, the appellant agreed to build the house and allow respondents to owe him the three hundred dollars over the amount of the loan, until they could pay it out of their wages. The appellant prepared the floor plans of the house, but the respondents signed them as if they had done so themselves and presented them to the city to secure the building permit. This was done to save the architect's fee, which would have been required had the appellant himself presented the floor plans to secure the permit. Appellant also furnished to respondents for submission with the loan application, information for the "breakdown sheet" which itemized the cost of labor and materials.

At this stage, when the loan was ready to be made, respondents learned that the FHA authorities would in fact make a loan in the amount of fifty-three hundred dollars. Respondents then told appellant of the addition to the loan and contend that he then stated: "That is fine, you won't owe me anything after that." The record is wholly silent upon what specifications were submitted to the FHA, but, in any event, its agents made several inspections during the progress of the work and released different sums to the respondents, which they put in their checking account upon which they drew checks in payment of the materials and labor. It appears that the appellant ordered the materials and selected and engaged the subcontractors, but that respondents paid for everything. Only two items, the linoleum and the light fixtures, were selected by respondents.

The respondents contended that the garage was not included in the loan nor the first oral contract, but that subsequently the appellant agreed to do the labor of framing the garage for fifty dollars. The respondents, over a period of the following six months, bought the material and did the labor necessary for its completion. The respondents produced checks in payment of labor and materials totaling the amount in excess of the agreed cost of the dwelling, for which they were given judgment.

As between the two conflicting theories presented by the parties, the court believed and found more reasonable the theory of the respondents and gave judgment accordingly. During the trial of the cause, there was never any dispute over the question of the specifications of the house. The respondents conceded that the house was satisfactory and was what they had contracted for. No complaint was made as to any deficiencies.

Now, upon appeal, the appellant contends that an oral contract for the construction of a house is unenforcible for want of definite agreed specifications and hence it is incapable of specific performance; that it must therefore be disregarded; and that the appellant's remedy is to recover in *quantum meruit* for the reasonable value of the labor and materials furnished.

It must be conceded that there was no written contract containing the specifications of the house. Indeed, the record is silent even as to what specifications the FHA authorities had as the basis for their loan. However, the controlling fact is that the contract was completely executed, and neither party made any contention that the house was not built according to the understanding of the parties. The case was tried upon the issue between the appellant's contention that he was to receive twelve hundred fifty dollars for the labor and the respondents' contention that they were to pay fifty-three hundred dollars for the completed house.

It is too late now on appeal to frame a new issue and urge that the oral contract to furnish the labor for twelve

hundred fifty dollars alleged by the appellant was invalid, and that he is therefore entitled to recover on *quantum meruit.*

■ An executed contract for the construction of a house, where no contention is made that the specifications were departed from, is not subject to the same objections that could have been made at a time when the contract was still executory.

This court said in *Lasswell v. Anderson,* 127 Wash. 591, 221 Pac. 300:

" 'It is elementary that contracts that are unenforceable become enforceable in so far as they become executed contracts.' *Hamilton v. Best Gas Traction Co.,* 123 Wash. 488, 212 Pac. 1077; *Taylor v. Ewing,* 74 Wash. 214, 132 Pac. 1009; 6 R. C. L. 690; 13 C. J. 334."

See, also, *McDougall v. McDonald,* 86 Wash. 334, 150 Pac. 628, which was an action for an accounting of profits earned by joint adventurers under an oral contract. In holding that appellants could not refuse the accounting on the grounds that the contract was void for indefiniteness, this court said:

"If this were an action to enforce a specific performance, or to recover damages for a failure to perform the contract, there might be some merit in appellants' contention. . . . Full performance of the contract has made it certain in every respect in which, as an executory contract, it might have been regarded as uncertain."

In 12 Am. Jur. 558, § 67, the proposition is stated that: "The objection of indefiniteness may be obviated by performance and acceptance of performance."

See, also, *Washington Chocolate Co. v. Canterbury Candy Makers,* 18 Wn. (2d) 79, 138 P. (2d) 195; and *Coerver v. Haab, ante* p. 481, 161 P. (2d) 194.

The judgment is affirmed.

BEALS, C. J., MILLARD, STEINERT, and JEFFERS, JJ., concur.