[No. 109-40594-1.     Division One.     March 30, 1970.|
Panel 2

HIGHLANDS PLAZA, INC., *Respondent*, v. VIKING INVESTMENT CORPORATION, *Appellant*.

*Hulbert Murray,* for appellant.

*Karr, Tuttle, Campbell, Koch & Campbell, Carl G. Koch,* and *Floyd L. Newland,* for respondent.

HOROWITZ, A. C. J.—Plaintiff, Highlands Plaza, Inc. (Highlands), brought an action to obtain specific performance of an earnest money agreement, and, in the alternative, for damages. The trial court entered a judgment for damages in favor of the plaintiff (specific performance having been waived), and the defendant, Viking Investment Corporation (Viking), appeals. This is the second appeal. On the first appeal in *Highlands Plaza, Inc. v. Viking Inv. Corp.,* 72 Wn.2d 865, 435 P.2d 669 (1967), the Supreme Court reversed ordering a new trial. We take judicial notice of the records of the prior appeal. *Perrault v. Emporium Dept. Store Co.,* 83 Wash. 578, 145 P. 438 (1915). For convenience, we restate the case.

Highlands and Viking executed an earnest money receipt and agreement on June 9, 1965. Mr. Howard A. Parker, a member and chairman of Viking's board of directors and a one-third stockholder of that company, acted as real estate broker on a commission basis. It was contemplated that Highlands was to secure financing for the purpose of building an apartment house on the subject property, the financing to be secured by a first mortgage against the property. By the terms of that agreement Viking agreed to sell to Highlands certain described "Bitter Lake Property" for $200,000, $75,000 cash on closing, the balance to be evidenced by a promissory note payable to Viking in the sum of $125,000 secured by a mortgage against the subject property, the mortgage to be subordinate to a construction loan. The earnest money receipt and agreement provided that "first mortgage will not exceed 75% of the lending institution's appraisal of the land and improvements." This provision was inserted at the suggestion of and for the benefit of

Viking. The agreement, which was on a printed form also provided that "Purchase is made subject to approval of financing within 60 days from the acceptance of this offer . . . " It contained the following provision: "If financing is required, purchaser agrees to make application for same, immediately upon request of agent, sign necessary papers, and pay required costs at the lending institution selected by agent." Highlands took steps to obtain financing by Securities Mortgage Company and arranged for the preparation of preliminary plans. The title report issued by the title insurance company about October 1, 1965, indicated certain exceptions to the title which would require action by Viking to clear before the transaction would be closed.

Viking, anticipating the necessity of removing one such exception, had on or about July 13, 1965, executed an agreement with a Mr. Olson under the terms of which it was agreed that Mr. Olson would release his vendor's interest in the subject property if the promissory note and the second mortgage to be executed by Highlands calling for $1,500 a month payments with interest at 6 per cent per annum were assigned to him.

More time was needed to complete the closing and on more favorable terms. Howard A. Parker executed an agreement under date of September 30, 1965, on behalf of Viking reading as follows:

> Earnest Money acceptance date to be extended to October 15, 1965. Purchaser and Seller agree to change the monthly payments to $700.00 (interest only) for a period of two (2) years or sooner, if occupancy on the apartments is filled to 90% capacity before said date. (Subject to approval by Carl Olson by Oct. 15, 1965).

> Viking Investments        September 30, 1965
> Howard A. Parker

>            Highland Plaza, Inc.
>            By: Howard O. Wilson, Pres.

On October 22, 1965, a further agreement was executed reading as follows:

Earnest money acceptance date to be extended to November 25, 1965. Purchaser and Seller agree to change the monthly payments to $700.00 (interest only) for a period of two (2) years or sooner, if occupancy on the apartments is filled to 90% capacity before said date. Subject to approval by Carl Olson by Nov. 25, 1965.

Viking Investments          October 22, 1965
Howard A. Parker

           Highlands Plaza, Inc.
           By:    Howard O. Wilson, Pres.

With consent of a Mr. Mooremeier of Mr. Parker's brokerage office, Highlands negotiated with Mr. Olson in an effort to obtain his consent. On November 4, 1965, Mr. Olson wrote a letter to Viking which, in part, stated: "I do hereby approve the extension of the closing date and to such further extensions as may be required not beyond December 15, 1965." On or about that date Viking notified Highlands to conduct no further negotiations with Mr. Olson. Mr. Olson's consent to the change in monthly payments had not been obtained and the court found that Viking stated: "that defendant would take care of that matter." Viking did not, however, negotiate with Mr. Olson after receiving the letter of November 4. The court further found that Mr. Olson might have consented to the provisions of the extension agreements if asked to do so and that Mr. Olson would have cooperated in attempting to arrange a release of his interest if asked to do so.

Shortly after the execution of the earnest money receipt and agreement, Highlands entered into negotiations for the sale of its interest in the subject property to a group headed by Mr. Ray Lotto. However, Mr. Lotto decided to deal with Viking directly. About the middle of December, 1965, Mr. Lotto's group offered to purchase the subject property from Viking for a sum substantially higher than the price Highlands had agreed to pay. On December 17,

1965, Viking wrote a letter to Highlands, the last part of which reads as follows:

> Accordingly, we do hereby demand that you immediately submit to us your financing plans for our approval, and further that you deposit in escrow the $75,000.00 down-payment called for by the Earnest Money Receipt and Agreement. In the event you fail to do one or both of these conditions, or in the event we should disapprove of your financing plan, by 4:00 p.m. December 24, 1965, said Earnest Money Receipt and Agreement shall thereby become null and void.

Highlands on December 23, 1965, in response to the letter of demand, deposited with the escrow agent $70,000 (being the unpaid balance due after the down payment of $5,000 as earnest money which had theretofore been paid by Highlands, first by note and then by cash) a promissory note of $125,000, which called for payments of $700 per month, a statutory mortgage to secure the promissory note and escrow instructions. Viking after examining the instruments and deposit, rejected them as not in compliance with the earnest money receipt. Viking then requested a meeting with Highlands to discuss the matter, Mr. Mooremeier testifying that the purpose of the meeting was to induce Highlands to increase the pruchase price from $200,000 to $225,000. Highlands refused to have a meeting, withdrew its money from the escrow and commenced the legal action below.

Viking assigns error to the making of certain findings and conclusions. The court below found that the evidence introduced in the trial below was substantially the same as the evidence introduced in the trial of the first case considered by the court on the first appeal. In our opinion, there is substantial evidence and reasonable inference therefrom to support this finding on the issues of liability.

Viking contends that the earnest money receipt and agreement is illusory; i.e., its terms are too vague and indefinite to support a judgment of damages for breach of

contract.[1] It contends that the provision "Purchase is made subject to approval of financing within 60 days from the acceptance of this offer . . . the first mortgage will exceed 75% of the lending institution's appraisal of the land and improvements." omits so many important details that the performance by the purchaser is in effect entirely optional or discretionary on the part of the purchaser. Viking calls attention to the omission of provisions dealing with the period of time of repayment, the interest rate, the initial service or discount charges, tax insurance and acceleration provisions, the party by whose efforts the loan is to be arranged and procured, the potential sources of money, the question of how onerous the terms of any proposed loan may be before justifying the purchaser's rejection thereof and the consequences of a prospective lender's withdrawal after tentative loan commitment has been given.

Highlands contends (1) that the earnest money receipt is sufficiently definite to be enforceable, particularly citing *White & Bollard, Inc. v. Goodenow,* 58 Wn.2d 180, 361 P.2d 571 (1961), but that in any case (2) Viking is precluded by the law of the case from now raising the question on this second appeal; that the issues of the claimed illusory character of the earnest money receipt should have been presented on the first appeal when the validity of the earnest money receipt and agreement was necessarily involved; that because the court on the first appeal treated the earnest money receipt and agreement as valid, the decision of the court on the first appeal is binding upon the parties.

We agree with Highlands. It has long been the law in this state (1) that in the absence of a substantial change of evidence on the second trial, questions determined or which could have been determined on the first appeal will

---

[1] Viking particularly cites *Gerruth Realty Co. v. Pire,* 17 Wis. 2d 89, 115 N.W.2d 557 (1962); *Krause v. Holand,* 33 Wis. 2d 211, 147 N.W.2d 333 (1967); Aiken, *"Subject to Financing" Clauses in Interim Contracts for Sale of Realty,* 43 Marquette L. Rev. 265 (1960); Raushenbush, *Problems and Practices with Financing Conditions in Real Estate Purchase Contracts,* Wis. L. Rev. 566 (1963); Comment: 46 Marquette L Rev. 388 (1962-1963).

not be redetermined on the second trial and appeal. *Zorich v. Billingsley*, 55 Wn.2d 865, 867, 350 P.2d 1010 (1960); *Clark v. Fowler*, 61 Wn.2d 211, 377 P.2d 998 (1963); *Perrault v. Emporium Dep't Store Co.*, 83 Wash. 578, 145 P. 438 (1915); *Dennis v. Kass & Co.*, 13 Wash. 137, 42 P. 540 (1895); (2) it is enough if the contention advanced on the second appeal was necessarily involved in the decision on the first appeal even though no specific mention was made of the matter. *Clark v. Fowler, supra; Buob v. Feenaughty Mach. Co.*, 4 Wn.2d 276, 103 P.2d 325 (1940); (3) accordingly, the decision on the first appeal on substantially the same pleadings and evidence becomes the law of the case, binding upon the parties. *Buell v. Park Auto Transp. Co.*, 138 Wash. 678, 244 P. 992 (1926); *Toadvine v. Northwest Trust & State Bank*, 128 Wash. 611, 224 P. 22 (1924); *State ex rel. Nicomen Boom Co. v. North Shore Boom & Driving Co.*, 62 Wash. 436, 113 P. 1104 (1911). In *Greene v. Rothschild*, 68 Wn.2d 1, 8, 402 P.2d 356, 414 P.2d 1013 (1965) the court discussed the doctrine of the law of the case at length. It held that the doctrine is a mere rule of practice and not a limitation on the court's power and that, accordingly, the court may in an appropriate case refuse to apply the doctrine. However, it quoted with approval the following statement:

> It is, however, recognized that an appellate court's power to depart from its own ruling on a former appeal may be invoked not as a matter of right, but of grace and discretion, and should be exercised only sparingly or rarely, and for cogent reasons, after careful consideration of the situation involved in individual cases, or, more specifically, in a clear case under extraordinary or exceptional circumstances, in the interest of justice.

It is true that the term "financing" as used in the "subject to financing" clause contained in the earnest money receipt and agreement, does not reveal itself in required detail. If the instant earnest money receipt and agreement contained only the "subject to financing" clause, there is authority, as appellant contends, that would render the earnest money

receipt and agreement void. *Gerruth Realty Co. v. Pire,* 17 Wis. 2d 89, 115 N.W.2d 557 (1962); *Krause v. Holand,* 33 Wis. 2d 211, 147 N.W.2d 333 (1967) (a specific performance case). Neither of these cases involved the clause hereinafter discussed contained in the instant earnest money receipt and agreement. However, it has been pointed out that even in Wisconsin, interim contracts for the sale of realty are useful devices commonly used (Raushenbush, *Problems and Practices with Financing Conditions in Real Estate Purchase Contracts.* Wis. L. Rev. 566 (1963)); that it may properly be assumed that "subject to financing" clause was intended to permit the purchaser acting in good faith to determine what was the required financing. See, Comment: 46 Marquette L. Rev. 388 (1962-1963) discussing the reasoning used in *Reese v. Walker,* 77 Ohio L. Abs. 583, 151 N.E.2d 605 (1958); Aiken, *"Subject to Financing" Clauses in Interim Contracts for Sale of Realty,* 43 Marquette L. Rev. 265 (1960). The reasoning proposed would enable the use of an earnest money receipt as a contractual obligation whose utility is recognized. *Hedges v. Hurd,* 47 Wn.2d 683, 289 P.2d 706 (1955) quoted with approval in *White & Bollard, Inc. v. Goodenow,* 58 Wn.2d 180, 361 P.2d 571 (1961). Such an earnest money receipt would place an obligation of performance upon the purchaser rather than a mere privilege to perform as in the case of options for the purchase of real estate. *Corinthian Corp. v. White & Bollard, Inc.,* 74 Wn.2d 50, 52, 442 P.2d 950 (1968); *Whitworth v. Enitai Lumber Co.,* 36 Wn.2d 767, 220 P.2d 328 (1950). In the instant case the "subject to financing" clause was a condition precedent to the earnest money receipt and agreement becoming performable as a binding real estate contract. Instead of leaving to inference the purchaser's obligation to obtain the required financing, the earnest money receipt and agreement made such an obligation an express one. The agreement provided: "If financing is required, the purchaser agrees to make application for same, immediately upon request of agent, sign necessary papers, and pay required costs to the lending institution selected by agent."

The evidence here shows that the purchaser, Highlands, did proceed to obtain and obtained financing satisfactory to itself. It was prepared to close the transaction because it communicated the details of the financing to the seller in compliance with the seller's letter of December 17, 1965. Whatever indefiniteness existed concerning the nature of the financing required had been removed by the purchaser's pursuit of the very technique provided by the contract itself. Cf, *Christofersen v. Radovich,* 23 Wn.2d 846, 162 P.2d 830 (1945); 55 Am. Jur. *Vendor and Purchaser* § 6 (1946).

Furthermore, the "subject to financing" clause was not intended for the protection of the seller and, therefore, seller's approval of the financing obtained by the purchaser was not required. However, even if the "subject to financing" clause was for Viking's benefit, the requirement was excused by Viking's insistence upon a nonexistent right of approval under threat of forfeiture. See *Highlands Plaza, Inc. v. Viking Inv. Corp.,* 72 Wn.2d 865, 876, 435 P.2d 669 (1967); *White & Bollard, Inc. v. Goodenow, supra.* Had the question of contract validity been raised on the first appeal, the court might well have upheld the validity on the basis of the foregoing considerations and cases. This is not "a clear case under extraordinary or exceptional circumstances" in which the overruling of a decision on a prior appeal in the same case is required "in the interest of justice." (*Greene v. Rothschild,* 68 Wn.2d 1, 9, 402 P.2d 356, 414 P.2d 1013). We, therefore, see no justification for making a determination on this appeal which would in effect overrule the implied determination of validity so recently made on the first appeal. The trial court below held the earnest money receipt and agreement enforceable. Its action in doing so is correct as being in conformity with the holding of the Supreme Court on the first appeal.

Viking next contends that the extension agreements of September 30, 1965, and October 22, 1965, were not binding upon Viking because (1) Howard A. Parker had no authority to execute those agreements; and (2) that the approval of Carl Olson had not been obtained to the extensions of

time. The trial court found that Mr. Parker had the necessary authority to execute the extension agreements on behalf of Viking. The evidence showed that after the letter of December 17, 1965, had been received, Mr. Joseph D. Holmes, Jr., an attorney for Highlands, (unexpectedly called in to prepare the closing papers on behalf of Highlands) having been unable to contact Mr. Kendall A. Sanwick, president and member of the board of directors and a one-third stockholder in Viking, telephoned Mr. Robert Carl Detrich, a director, secretary, treasurer and one-third stockholder of Viking, and had been assured by him that Mr. Parker did have the requisite authority to sign the extension agreements. In the trial below, Mr. Kendall A. Sanwick, in part of his testimony, treated the extension agreements as valid although in other parts of his testimony, he denied that Mr. Parker had the requisite authority. Mr. Parker's testimony and reasonable inferences therefrom support the view that he had authority to execute the extension agreements. At the first trial, counsel for Viking both in his brief before the trial court and in his brief on the first appeal treated the extension agreements as binding upon Viking. In our opinion, substantial evidence supports the court's finding that Mr. Parker had authority to bind Viking by the extension agreements. Furthermore, in *Highlands Plaza, Inc. v. Viking Inv. Corp.*, 72 Wn.2d 865, 435 P.2d 669 (1967) the Supreme Court held that Mr. Olson's approval was not needed for the extension of time but was a condition only to the agreement to reduce payments. The court further held that if Mr. Olson's approval was required for the extension of time, the requirement was excused by Viking's action which, in effect, prevented Mr. Olson's consent from being obtained. *Highlands Plaza, Inc. v. Viking Inv. Corp., supra,* at page 875. The trial court's conclusion below was in conformity with the opinion of the Supreme Court on the first appeal rendered on substantially the same evidence.

Viking further contends that its letter of December 17, 1965, did not constitute a repudiation of its contractual

obligation so as to constitute a breach of contract. On the first trial, Viking took the position that its letter was a demand that Highlands take all steps necessary for closing by December 24 at 4 p.m. The Supreme Court in its opinion held that because of the extensions of time, Highlands had until January 24, 1967, to perform (*Highlands Plaza, Inc. v. Viking Inc. Corp.*, 72 Wn.2d 865, 878, 435 P.2d 669 (1967)) and that, accordingly, the letter of December 17, 1965, "was well ahead of the date on which appellant's [Highlands'] performance was due."; that, accordingly, if Highlands' performance was defective it was "of no consequence" because "where such a breach occurs, no tender of performance by the promisee [Highlands] is necessary to his right to recovery against the promisor who has breached the contract." Viking now contends in its brief that the letter of December 17 should be read not

> for complete performance of the transaction, but a statement that in the event the respondent failed to do one or both of the two conditions by the designated time, the Earnest Money Receipt and Agreement would thereby become null and void. It here should be noted that the respondent complied with one of the conditions, the deposit of the money.

The letter, however, stated:

> In the event you fail to do one or both of these conditions, or in the event we should disapprove of your financing plan . . . said Earnest Money Receipt and Agreement shall thereby become null and void.

The demand as written showed an intention to treat the earnest money receipt and agreement as void if Highlands failed to submit its financing plans for Viking's approval and failed to deposit the $75,000 down payment. The provision for submitting financing plans for approval was one for the benefit of the purchaser and was not required to be submitted to Viking. Mr. Sanwick testified that the financing plans as submitted were not satisfactory and were not approved. Furthermore, there was testimony by Mr. Parker himself that the letter of December 17, 1965, was written to induce the breach of contract rather than to require per-

formance because a higher offer had been received. The trial court below found that "The defendant called upon plaintiff to take steps for closing in order to induce a breach of contract because defendant had received a better offer for the Bitter Lake property." There is substantial evidence to support this finding and as is the case with respect to the other findings below, we are bound by such findings when supported by substantial evidence. *Zillah Feed Yards, Inc. v. Carlisle*, 72 Wn.2d 240, 432 P.2d 650 (1967). Following the rejection of the financing plans, Viking treated the earnest money receipt and agreement as void and thereafter sold the property to Mr. Lotto's group.

■ Viking finally contends that the findings of damages sustained and attorneys' fees awarded are not supported by substantial evidence. We have examined the record and disagree. Expert witnesses testified to the fair market value of the subject land at the date of the breach in December, 1965. The values testified to range from $275,000 to $310,000. The fact that the subject property was contracted to be sold in March, 1966, to Mr. Lotto's group for $250,000 does not necessarily establish its fair market value in December, 1965. We cannot weigh the evidence and then make our own determination that the price at which the property was later sold is more persuasive evidence of fair market value than the expert testimony as to the fair market value of the property at the date of the breach. *Steele v. Queen City Broadcasting Co.*, 54 Wn.2d 402, 341 P.2d 499 (1959).

On the question of attorneys' fees, there was expert testimony that would have justified a higher award than that allowed by the trial court. The court found that $5,000 was a reasonable fee for services at the first trial, $3,500 a reasonable fee for services on appeal, and in view of the successful results on the second trial, $6,000 was a reasonable fee for services at that trial. Viking's expert testimony was $5,000 on the first trial, $1,750 on appeal and $5,000 on the second trial, or a total of $11,750.

The trial court had the right to accept the testimony

204

offered on behalf of the respondent as substantial evidence. Under these circumstances we may not substitute our findings for those of the trial court. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

The judgment is affirmed.

FARRIS and WILLIAMS, JJ., concur.