[No. 42919.    En Banc.    February 7, 1974.]

NATIONAL BANK OF WASHINGTON et al., *Respondents,* v. EQUITY INVESTORS et al., *Defendants,* COLUMBIA WOOD PRODUCTS, INC., *Petitioner,* SUPERIOR COURT FOR KING COUNTY, *Respondent.*

*Henry, Wheeler & Meade, Charles S. Wheeler, Kempton, Savage & Gossard,* and *David W. Gossard,* for petitioner.

*Bogle, Gates, Dobrin, Wakefield & Long,* by *Orlo B. Kellogg, Bettina B. Plevan,* and *Dan P. Hungate* and *Torbenson, Thatcher & McGrath, P.S.,* by *Richard M. Thatcher,* for respondents National Bank of Washington and General Mortgage Investments.

*Rauscher & Kiefer,* by *Edward A. Rauscher,* for respondents MacDonald, Stein, Lancaster and Christian.

*Schweppe, Doolittle, Krug, Tausend, Beezer & Beierle,* by *Robert R. Beezer,* amicus curiae.

HUNTER, J.—This is a second review by this court on the issue of lien priorities of various parties resulting from the construction of an apartment complex. Our disposition of the first appeal was in *National Bank v. Equity Investors,* 81 Wn.2d 886, 506 P.2d 20 (1973). We again state the facts for a more complete understanding of the background of the second appeal.

In 1968 a group of four Boeing Company engineers, hereinafter referred to as the "MacDonald group" or "MacDonald," owned two parcels of land in south Seattle and set in motion a scheme for the construction of a large apartment complex. They obtained some initial capital backing, and eventually signed a real estate contract to sell the two parcels to a developer, Equity Investors, on December 30, 1968.

Shortly thereafter, a construction loan was obtained from the respondent, National Bank of Washington, hereinafter referred to as the "Bank." The Bank's construction loan was secured by a deed of trust recorded on May 19, 1969. At this point, the parties to the real estate contract decided that the contract for sale should be terminated, and the

property passed to Equity Investors subject to a deed of trust designating MacDonald as beneficiary. MacDonald's deed of trust was recorded on May 15, 1969, but in order to facilitate the loan for Equity Investors from the Bank, MacDonald agreed that its otherwise prior interest would be subordinated to the security interest of the Bank. On May 26, 1969, the petitioner, Columbia Wood Products, Inc., hereinafter referred to as "Columbia," commenced delivering lumber to the construction project. Its materialman's lien was thereafter duly perfected.

As construction on the project progressed, it became clear to the parties that the construction loan by the Bank would be insufficient to complete the project due to substantial cost overruns. Consequently, lien foreclosure suits resulted, and the cases were consolidated for trial in the Superior Court for King County. The three cases with which we are concerned in this second review involved the following: foreclosure of the deed of trust lien by the Bank, the construction lender; foreclosure of the purchase money deed of trust of the MacDonald group, which deed of trust lien had been subordinated by agreement to the deed of trust lien of the Bank; and the foreclosure of the materialman's lien of Columbia.

On October 22, 1971, the trial court determined the lien priorities of the three parties, among others, to be as follows: First, the deed of trust lien of the Bank securing the construction loan; second, the deed of trust lien of MacDonald, securing the balance of the purchase price of property; and third, the materialman's lien of Columbia, which waived its right to foreclose at the trial after the trial court's determination that its lien was inferior to the Bank and MacDonald.

After the judgment was entered by the trial court on October 22, 1971, a number of parties, including the petitioner Columbia, appealed to this court. In its appeal, Columbia assigned error to the priority of the Bank lien, but did not assign error to the priority of the MacDonald lien. On that appeal Columbia contended that notwithstanding

the fact that the Bank had duly recorded its deed of trust lien prior to the time that Columbia commenced to deliver materials, its materialman's lien attached as of May 26, 1969, and was superior to the lien of the Bank for all advances made after that date. It argued that under the Bank's loan agreement with the developer, advances made by the Bank were voluntary or optional and the lien for same attached as of the date of the advance instead of the date of the recording of the deed of trust. We agreed with the reasoning of Columbia in our decision in *National Bank v. Equity Investors, supra,* where we stated on page 927:

> In conclusion, then, and to summarize: We find that advances by the bank under its construction loan agreement with Equity Investors were optional in law rather than obligatory, and hold that Columbia Wood Products' materialman's lien is superior to the bank's lien for later advances and, accordingly, reverse.

A petition for rehearing filed by the Bank was denied on June 14, 1973, and this court sent the remittitur to the Superior Court for King County.

Shortly thereafter, the petitioner Columbia filed a motion with the trial court for an award of attorneys' fees and entry of judgment in its favor against the Bank. The Bank moved for a denial of Columbia's motion and for the setting of a trial on a number of issues involved in Columbia's claim, other than the issue of lien priority determined by this court in the first appeal. Columbia filed an additional motion asking the court to enforce a lien on funds held by the Bank in the amount of its judgment, or in the alternative to vacate the foreclosure sale held on February 18, 1972, where the Bank and General Mortgage Investments were the successful bidders for the sum of $1,883,712.33. At a hearing held on July 2, 1973, where all parties were represented except the respondent MacDonald, the trial court rendered an oral decision denying the Bank's motion and determined that Columbia was entitled to recover the amount of its judgment claim from the proceeds of the foreclosure sale. The matter was continued to July 12, 1973,

for the purpose of determining the amount of attorneys' fees to be allowed Columbia.

Subsequently, the respondent MacDonald filed a motion with the trial court asking it to enter a judgment giving to MacDonald an amount equal to its judgment on foreclosure *prior* to the judgment claim by Columbia. On July 12, 1973, the trial court ruled that after the payment of the earlier advances to the Bank, MacDonald was entitled to be paid the first proceeds of the foreclosure sale in an amount equal to the MacDonald claim; next, Columbia was to receive an amount equal to its claim, less the amount to be paid to MacDonald; and the Bank was to receive the remaining sale proceeds. In addition, the trial court ruled that Columbia was entitled to an award of attorneys' fees in the sum of $4,410.17 for the original trial, $10,000 for the first appeal, and $10,000 in the event of a further appeal. Columbia's failure to assign error to the priority of the Mac-Donald lien in the first appeal was evidently controlling in the trial court's decision.

On August 22, 1973, the trial court entered findings of fact and conclusions of law with respect to its oral decisions, and entered an order denying the Bank's motion for a trial on issues relating to Columbia's lien. On August 22, 1973, Columbia made application with this court for a writ of prohibition and stay of proceedings, contending that the distribution of the proceeds by the trial court was contrary to a fair interpretation of the Supreme Court's opinion in the earlier appeal. In response, this court entered a stay order and the petitioner Columbia posted a bond in the amount of $10,000 to protect MacDonald from damages that it might suffer by reason of the stay. On September 13, 1973, the trial court entered a partial judgment on remand and order pursuant to the first Supreme Court opinion.

Columbia contends that the trial court failed to carry out the directions of this court in the decision of this case on the first appeal by determining that MacDonald rather than Columbia was entitled to the first proceeds of the foreclosure sale. MacDonald, on the other hand, relies strongly

upon the law of the case doctrine. *Calistro v. Spokane Valley Irr. Dist.,* 78 Wn.2d 234, 472 P.2d 539 (1970); *Highlands Plaza, Inc. v. Viking Inv. Corp.,* 2 Wn. App. 192, 467 P.2d 378 (1970), and contends that Columbia's failure to appeal the trial court's ruling in the first trial, that MacDonald was prior to Columbia in lien priorities, now prevents Columbia from asserting priority over the MacDonald group. MacDonald submits that the decision of this court placing Columbia ahead of the Bank in participating in the foreclosure sale proceeds did not affect MacDonald's priority as to Columbia. We must agree with the contention made by Columbia.

To untangle this web, we first examine the subordination agreement between MacDonald and the Bank. The pertinent language provides:

> In consideration of benefits to "subordinator" from "owner" receipt and sufficiency of which hereby acknowledged, and to induce "lender" to advance funds under its mortgage and all agreements in connection therewith, the "subordinator" does hereby unconditionally subordinate the lien of his mortgage identified in Paragraph 1 above to the lien of "lender's" mortgage, identified in Paragraph 2 above, and all advances or charges made or accruing thereunder, including any extension or renewal thereof.

This language is unconditional, broad and comprehensive. There is no way that MacDonald, by this subordination agreement, can be placed in a more favorable position than the Bank in the sharing of the proceeds of the foreclosure sale. Furthermore, MacDonald is bound by the result of any determination by the Bank in the exercise of its option to pay the materialman, as the loan advancements are made.

Had the Bank determined to pay Columbia for the materials as they were furnished, it would have resulted in MacDonald becoming inferior to Columbia in the payment of its lien claim, to which it would have been bound under its subordination agreement. By the same token, the Bank's

bypassing of Columbia for payment of materials as they were furnished, resulting in our placing Columbia ahead of the Bank because of its unjust enrichment, again results in Columbia coming ahead of MacDonald as a result of the Bank's action, to which MacDonald is bound under its subordination agreement. The basis upon which we directed Columbia to share in the foreclosure proceeds ahead of the Bank is stated on pages 899-900 of our opinion:

> Thus, we are adhering to what we perceive to be the weight of authority embodied in the rule that, where the advances of promised loan moneys are, under an agreement to lend money, largely optional, that is, where the time and the amount of the moneys to be advanced are largely discretionary in the lender, the legal effect of such provisions is to bring the transaction under the rule for optional advances rather than the rule governing mandatory advances for the purpose of determining lien priorities. Optional advances under a construction loan agreement attach when the advances are actually made. Any liens attaching prior to an optional advance would thus be superior to it, and attaching afterwards, junior to it. . . .
>
> A contrary rule on that point would allow a lender, having power to allocate the loan moneys in such a way as to insure that those whose work, materials and efforts serve to enhance the value of the security, to sit idly by and watch his security grow, while at the same time potentially leaving the materialmen, subcontractors and workmen in the position of doing their work and supplying materials for little or nothing. The rule here contended for by lender would lead to an inevitable unjust enrichment, enabling the lender to withhold or apply the loan money as he saw fit, all the while knowing that putative lien claimants were furnishing valuable materials and doing valuable work to the enhancement of his security. The bank here had the option of withholding its advances on the loan from the borrower, and the right to apply the money to the account of Columbia Wood Products in payment of the lumber that company was delivering to the construction project.

(Citations omitted.) *National Bank v. Equity Investors*, 81 Wn.2d 886, 506 P.2d 20 (1973).

We again state our conclusion in *National Bank v. Equity Investors, supra* at 927:

> In conclusion, then, and to summarize: We find that advances by the bank under its construction loan agreement with Equity Investors were optional in law rather than obligatory, and hold that Columbia Wood Products' materialman's lien is superior to the bank's lien for later advances and, accordingly, reverse.

It is clear that we intended Columbia's lien claim for materials furnished to be satisfied in full from the proceeds of the foreclosure sale prior to the Bank's lien claim for later advances in order to nullify the Bank's unjust enrichment at the expense of Columbia. MacDonald, therefore, cannot be permitted to take advantage of the Bank's unjust enrichment and to thwart the direction of this court that Columbia be paid in full from the proceeds of the foreclosure sale. The trial court by its judgment, in effect, erroneously paid MacDonald's claim not from the proceeds of the foreclosure sale, but from the amount of foreclosure sale proceeds which we directed to be paid to Columbia. If MacDonald, on the basis of its asserted priority, was to be paid at all, it should have been from the proceeds of the foreclosure sale ahead of Columbia, but this cannot be permitted since such a disposition would be putting MacDonald in a more favorable position than the Bank in violation of the subordination agreement.

MacDonald's contention that Columbia is barred from asserting its lien priority over MacDonald under the law of the case doctrine, since Columbia failed to appeal the ruling by the trial court in the original trial that MacDonald's lien was prior to Columbia's lien, cannot be sustained under the facts of this case. The appeal must be considered in its totality, and in so doing the holding by the trial court in the original trial that MacDonald's lien was prior to Columbia's lien was necessarily contingent upon the Bank prevailing over Columbia in the appeal. In the event Columbia succeeded in being placed ahead of the Bank as to its later advances, MacDonald would be brack-

eted in its same position with the Bank by reason of the subordination agreement. We resolved the lien controversy between the Bank and Columbia in Columbia's favor, and therefore MacDonald cannot now rely upon the law of the case doctrine to avoid the result of our decision in the first appeal.

██ The Bank contends that Columbia is without standing to enforce its lien because it waived its lien in the original trial and took in lieu thereof a personal judgment for the value of materials furnished; that this court did not pass on the issue of Columbia's waiver of its lien, and the law of the case doctrine applies.

This contention is without merit. The record shows that the basic issue before the trial court was whether the Columbia lien was prior to the Bank by reason of the Bank's failure to exercise its option to pay for the materials Columbia furnished in making its loan advances. The election taken by Columbia to waive its lien was after the trial court had ruled adversely to Columbia in holding its lien was inferior to the Bank. The issue as to the priority of Columbia's lien over the Bank was presented by Columbia in its appeal, in which we reversed the trial court, thereby recognizing the existence of Columbia's perfected lien, and by necessary implication holding the lien had not been waived.

██ The Bank further contends that this case should be remanded for trial on the merits as to the amount due Columbia under its lien for materials furnished. The Bank argues that in the original trial it had no reason to question the amount claimed due by Columbia for materials furnished after the trial court determined that its lien was prior to Columbia. This contention is without merit since the Bank was charged with notice of the possibility that the trial court's determination of lien priorities might be changed on appeal, and it therefore had the opportunity at the trial to question the amount of Columbia's lien to meet this possible contingency. Trials must come to a conclusion and cannot be tried piecemeal.

The Bank further contends that the attorneys' fees allowed by the trial court for Columbia's first appeal in the amount of $10,000, and $10,000 for the second appeal, in the event Columbia prevailed on the appeal, were excessive. We have examined the record and conclude that it does not support the allowance of fees in this amount for these appeals. The attorneys' fees are therefore reduced to $5,000 for each appeal.

The judgment of the trial court in determining MacDonald's lien prior to Columbia is reversed with directions that Columbia's lien in the amount determined by the trial court, together with costs and the modification of attorneys' fees on appeal to $5,000 for each appeal, be satisfied from the proceeds of the foreclosure sale consistent with this opinion.

The bond posted by Columbia pending this review is quashed and the sureties thereon are exonerated.

HALE, C.J., HAMILTON, STAFFORD, and WRIGHT, JJ., and RYAN and LeVEQUE, JJ. Pro Tem., concur.

UTTER, J. (dissenting)—I concur except for that portion of the opinion which denies the National Bank of Washington a trial on the merits of the amount due Columbia Wood Products, Inc. under its lien. I believe a review of the history of the case and the applicable law demands such a remand.

In the original proceedings, the court determined the Bank's lien was prior to Columbia's. At that point, the Bank had no reason to challenge the amount of Columbia's lien claim as its claim was inferior to that of the Bank.

The judgment of the trial court foreclosing and establishing the amount of Columbia's lien is not supported by findings of fact in either the initial trial or proceedings on remittitur. This is conceded by Columbia. The trial court could not enter findings of fact regarding Columbia's lien claim because its decision in the initial hearing regarding priorities was made as a matter of law and there was, therefore, no necessity for the Bank to produce testimony

controverting Columbia's lien claim. When we reversed the trial court's decision on appeal, it still left the question of the amount of the lien, as it affected the Bank, unlitigated.

Columbia argues that the amount of its claim was determined by a 1971 judgment against Brama Construction. The Bank could not be bound as to that judgment because the Bank was not Columbia's adversary at that point and had no right to challenge that judgment. *Snyder v. Marken,* 116 Wash. 270, 199 P. 302, 22 A.L.R. 1272 (1921); *In re Estate of Gallinger,* 31 Wn.2d 823, 199 P.2d 575 (1948).

The majority's conclusion that the amount of Columbia's claim should not be litigated because trials must come to a conclusion and cannot be tried piecemeal is without authority and under the special circumstances of this case, is not persuasive. Where a case has been terminated by a ruling of the trial court on an issue as a matter of law, prior to a full trial on the merits, and the ruling is reversed on appeal, we have uniformly on remand, provided for a trial on the merits. "It would be unjust to hold that the defendant is now foreclosed from presenting such proof, thus penalizing him for having secured a favorable ruling from the trial court. With the case in this posture, a remand is necessary in order to do justice to both parties." *Fuller v. Rosinski,* 79 Wn.2d 719, 724, 488 P.2d 1061 (1971).

We should remand for a trial on the merits the question of the amount due Columbia under its lien.

FINLEY, J., concurs with UTTER, J.