[No. 998-2.    Division Two.    March 7, 1974.]

D. W. WEAVER, *Respondent,* v. CLAUDE M. FAIRBANKS *et al.,*
*Appellants.*

*Robert P. Klavano* (of *Bottiger & Klavano*), for appel-
lants.

*John A. Rorem,* for respondent.

PEARSON, C.J.—Defendants Claude M. Fairbanks and wife appeal from a judgment awarding a real estate commission to plaintiff D. W. Weaver, d/b/a Weaver Realty. We perceive the issue to be: Did the defendant seller exercise good faith in rejecting the sale of his home, where to complete it on the stated condition of obtaining an FHA insured loan would require him to repair a latent defect discovered by an FHA inspection? We agree with the trial court that plaintiff was entitled to his commission.

It is not disputed that the listing agreement authorized the broker to procure a purchaser for $17,500 on terms of "Cashout, F.H.A. or conventional" with a 4 percent discount limitation if an FHA insured loan was utilized.

On March 25, 1972, the broker negotiated an earnest money agreement between defendants and prospective purchasers Russell L. Brown and wife. The stated purchase price was $17,500, which was to be paid "cash through an F.H.A. Section 221 maximum loan on 30 yr." A further written provision limited the discount to no more than 4 percent of the selling price.

Subsequently an FHA appraisal was obtained by defendant which corresponded with the required selling price and discount rate. However, the FHA inspection disclosed a latent defect in the property, requiring the expenditure of approximately $500 to correct, in order to bring the house into compliance with the city's building code. Defendant refused to authorize or undertake the cost of the repairs, rendering an FHA insured loan impossible. The sale was never consummated.

There is no evidence that the purchasers forfeited the earnest money or pressed for specific performance of the agreement. The sale simply aborted when defendants refused to absorb the cost of repairs specified by the FHA inspection.

The earnest money agreement contained the following provision immediately above defendants' signatures:

> On this date 3-25-72 we hereby approve and accept the sale set forth in the above agreement and agree to carry

out all the terms thereof on the part of the seller and the undersigned further agrees to pay a commission of One Thousand Fifty Dollars ($1,050.00) to the above agent for services. In the event earnest money is forfeited, it shall be apportioned to the seller and agent equally, providing the amount to agent does not exceed the agreed commission.

■■■ Plaintiff relies upon the well established rule stated in *Dryden v. Vincent D. Miller, Inc.,* 56 Wn.2d 657, 660, 354 P.2d 900 (1960).

We have held that, when a real-estate broker has procured a prospective purchaser who is accepted by the seller, and the seller promises to pay the broker a certain commission for services rendered, the broker has earned the commission, and the promise to pay it may be enforced.

Such is the rule even though the ultimate sale may never be consummated so long as the failure of the sale is not due to any fault of the broker. *Largent v. Ritchey,* 38 Wn.2d 856, 233 P.2d 1019 (1951).

We think, however, there is one additional rule which must be considered in connection with those mentioned above. Where the promise of the purchaser is conditioned on obtaining certain types of financing (in this case an FHA insured loan with no greater than 4 percent discount), the broker's right to collect his commission is also conditioned upon the availability of that type of financing to the purchaser. *White & Bollard, Inc. v. Goodenow,* 58 Wn.2d 180, 361 P.2d 571 (1961).

In this connection defendants urge that the earnest money agreement does not specifically require them to absorb the cost of repairs. Such a result would, they argue, (1) have the effect of reducing the agreed purchase price, and (2) contradict a printed provision in the agreement requiring the purchaser to purchase the property "in its present condition on the terms noted."

Before reaching the merits of those contentions, it is necessary to consider the seller's obligation with reference

to FHA financing. The key provision of the earnest money agreement states:

> If purchaser is obtaining an FHA insured loan it is expressly agreed that, notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the seller has delivered to the purchaser a written statement issued by the Federal Housing Commissioner setting forth the appraised value of the property for mortgage insurance purposes of not less than $17,500 which statement the seller hereby agrees to deliver to the purchaser promptly after such appraised value statement is made available to the seller. The purchaser shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the amount of the appraised valuation made by the Federal Housing Commissioner.

This provision must be read in conjunction with the general written condition of the agreement that purchaser be able to obtain a 30-year FHA insured loan.

Under the provision set forth above, even where the condition is not fulfilled, the purchaser still has an option to waive the condition and complete the sale by furnishing cash on some other basis than through FHA financing.

■ We commence our analysis by noting that an earnest money agreement may have validity so as to allow certain remedies, including the one sought here, even though it contains a condition precedent that the purchaser obtain a certain type of financing which renders ultimate consummation uncertain. *Hedges v. Hurd,* 47 Wn.2d 683, 289 P.2d 706 (1955); *White & Bollard, Inc. v. Goodenow, supra.*

When both parties accept such a condition by signing an earnest money agreement, good faith obligations and not mere privileges are imposed upon them to see that the condition is fulfilled. *See generally Highlands Plaza, Inc. v. Viking Inv. Corp.,* 2 Wn. App. 192, 467 P.2d 378 (1970).

Since the condition of the agreement involves the appraised value of defendant's property and imposes upon

defendant seller the obligation of obtaining the appraisal, it seems to us that such obligation must be pursued in good faith by the seller. This should be true to the same extent as it is where the sale is conditioned upon the purchaser's obtaining "satisfactory financing." In those cases the law requires the purchaser to exercise good faith and diligence in his attempts to obtain "satisfactory financing." *See Highlands Plaza, Inc. v. Viking Inv. Corp., supra.*

■ It is true, as defendant contends, that the agreement does not specifically require the seller to undertake repairs in order to qualify his property for an FHA insured loan. However, the agreement does not purport to define the legal requirements for obtaining an FHA insured loan other than to refer generally to "Section 221." Under these circumstances, the trial court is justified in resorting to extrinsic evidence to ascertain the meaning of that condition, and whether its meaning was understood by the seller. *See Corinthian Corp. v. White & Bollard, Inc.,* 74 Wn.2d 50, 442 P.2d 950 (1968).

■ Furthermore, as we have noted, the seller's obligation is to exercise good faith in his attempts to assist the purchaser with FHA financing. There may be circumstances where the seller has not been sufficiently informed of the federal inspection requirements for this type of financing or where the costs of repairs outlined in the inspection report are so extensive and unanticipated that to comply would cause the seller to substantially lose the benefit of his bargain. Under those circumstances, good faith would not in our view compel him to proceed with the repairs.

Such circumstances, however, are not present in this case. On disputed but substantial evidence the trial court found (finding of fact No. 10):

> That the defendants were aware from their prior experience that to sell their house FHA it would have to comply with FHA specifications and that they would have to pay for any correction required by the FHA in order to finance the sale through that organization. That the contract entered into between these parties required

these defendants to furnish an FHA commitment and that the net amount to be realized by the defendants from the sale was within the net amount represented by the plaintiff at the time the earnest money agreement was originally signed.

We think this factual finding disposes of defendants' general contentions that the repair requirement accompanying the FHA appraisal was not within the contemplation of the parties at the time the earnest money agreement was executed or that to furnish the repairs would unreasonably reduce the selling price. The finding entered justifies the conclusion that defendants did not exercise good faith in assisting the purchaser in fulfilling the financing condition, and accordingly the broker should be allowed the commission.

Defendants urge, however, that there is no express language in the earnest money agreement imposing upon them an obligation of repairing defects found by an FHA inspection, and that to find such an obligation to be implicit in the agreement to sell FHA would contradict a printed provision in the agreement requiring the purchaser to purchase the property "in its present condition on the terms noted."

It seems to us there are two answers to this contention. First of all, one of the "terms noted" was the requirement of FHA financing. If plaintiff was aware, as finding of fact No. 10 indicates, that an inspection and repairs were inherent in that type of financing, there would be no contradiction in purchaser's offer to purchase the property "in its present condition on the terms noted." Furthermore, where the cost of repairs is not so extensive as to cause a loss to defendant of the benefit of his bargain (as finding of fact No. 10 indicates), then defendant would have no reason, either in law or in equity, for refusing to complete the sale.

Secondly, even if the *written* provision for FHA financing, with its implicit requirement of an inspection and repair, were found to contradict the *printed* "as is" provision, the former would prevail over the latter provision as a matter of contract construction. As a general rule

of construction, written terms of a contract will prevail over printed terms. *See Green River Valley Foundation, Inc. v. Foster,* 78 Wn2d 245, 473 P.2d 844 (1970).

We hold that on the basis of the findings entered, the trial court properly concluded the plaintiff was entitled to the agreed commission.

Judgment affirmed.

PETRIE and ARMSTRONG, JJ., concur.