[No. 54837-9-I.   Division One.   July 25, 2005.]

DAVID E. THATCHER ET AL., *Respondents*, v. MICHAEL J. SALVO, *Appellant*.

*B. Jacob Bozeman*, for appellant.

*Jackson Schmidt*, for respondents.

¶1 SCHINDLER, J. — According to the Default provision of the Residential Real Estate Purchase and Sale Agreement (REPSA), if the buyer "fails, without legal excuse, to complete the purchase of the Property," the seller is entitled to retain the earnest money deposit.[1] The buyer, Michael J. Salvo, appeals the trial court's decision that the sellers, David and Carol Thatcher, were entitled to retain his earnest money deposit as damages under the Default provision of the REPSA. We conclude the financing contingency in the REPSA provides a legal excuse for Salvo's failure to complete the purchase, and Salvo's failure to provide notice under the Financing Addendum does not establish a breach of the Default provision in the REPSA. We reverse and remand.

## FACTS

¶2 On June 30, 2003, David and Carol Thatcher accepted Michael Salvo's offer to purchase their waterfront home in Seattle for $845,000. The Thatchers and Salvo executed a standard form REPSA.[2] The standard form Financing Addendum was incorporated into the REPSA.[3] The REPSA closing date was scheduled for August 20, 2003. The REPSA required an $18,000 earnest money deposit from Salvo. The parties in the Financing Addendum made the REPSA contingent on Salvo obtaining a conventional purchase loan and required him to apply for financing within five days.

---

[1] Clerk's Papers (CP) at 194.

[2] Northwest Multiple Listing Service (NWMLS) Form 21 (2001).

[3] NWMLS Form 22A (2001).

The Financing Addendum also includes seller and buyer termination notice provisions. Salvo submitted a completed loan application to his lender on June 30.

¶3 As the August 20 closing date approached, Salvo told the real estate agent his lender had not approved the loan application and he was unable to obtain financing to purchase the house by the closing date. At Salvo's request, the Thatchers agreed to extend the closing date to August 29.

¶4 On August 26, the Thatchers received another offer to purchase the property for $871,000. Because of the uncertainty about Salvo's ability to meet the closing deadline and purchase the property, the Thatchers began negotiations with the prospective buyer. On August 27, the real estate agent told Salvo the Thatchers were considering another offer and emphasized the need to obtain financing before the REPSA expired on August 29.

¶5 Salvo did not have financing by the August 29 closing date. On September 2, the Thatchers sent a letter to the real estate agent with an itemized list of improvements Salvo requested for a total cost of $1,752.60. The Thatchers said they would withhold the amount from Salvo's earnest money if Salvo did not tender funds to purchase the house. On September 4, the Thatchers accepted the other offer and scheduled the closing date for October 9. Salvo obtained approval for the loan from his mortgage lender on September 5.

¶6 On September 9, Salvo received a Rescission of Purchase & Sale Agreement (Rescission) signed by the Thatchers. In the Rescission, the escrow company was directed to disburse $1,752.60 of the $18,000 earnest money to the Thatchers and the remainder to Salvo. Salvo did not agree or sign the Rescission.

¶7 On September 10, Salvo filed a lis pendens against the Thatchers' property. On September 17, the Thatchers demanded removal of the lis pendens and threatened to sue Salvo for wrongfully clouding title if he did not. On September 23, Salvo filed a document entitled "Memorandum and

Notice of Interest in Real Property" (Notice of Interest).[4] The Notice of Interest asserted a contractual right to purchase the Thatchers' house. On September 25, the Thatchers again requested Salvo remove the lis pendens and the Notice of Interest. The Thatchers offered to return most of the earnest money to Salvo but retain $5,000 for attorneys' fees incurred in response to the lis pendens and $1,752.60 for the repairs Salvo asked them to make on the property. On October 3, Salvo filed a lien release form purporting to release the lis pendens, but not the Notice of Interest.

¶8 As a result of the lis pendens and Notice of Interest, the buyers who made the other offer refused to purchase the property.

¶9 On October 31, 2003, the Thatchers sued Salvo for breach of the REPSA, slander of title, to quiet title, and for damages. The Thatchers requested damages under RCW 4.28.320, RCW 7.28.150, and *Rorvig v. Douglas*, 123 Wn.2d 854, 873 P.2d 492 (1994), for breach of the REPSA, loss of the bargain, carrying costs, and unfavorable tax consequences. The Thatchers asked the court to enter a temporary restraining order quashing the lis pendens and Notice of Interest, a declaratory judgment quieting title to their property and awarding them the earnest money, prejudgment interest, and attorneys' fees and costs. Salvo answered and asserted counterclaims against the Thatchers for specific performance of the REPSA and return of the earnest money.

¶10 The Thatchers filed a motion for partial summary judgment to quash the lis pendens, dismiss Salvo's counterclaim for specific performance, and strike Salvo's affirmative defenses relating to specific performance. The Thatchers argued the REPSA expired when Salvo failed to close on August 29, and therefore Salvo had no right to purchase the property.

---

[4] CP at 83.

¶11 The trial court granted the Thatchers' motion for partial summary judgment and ruled the REPSA expired on the closing date, August 29, 2003. The court quashed the lis pendens and Notice of Interest because Salvo did not have "any subsisting contractual interest" in the property.[5]

¶12 After the court granted the Thatchers' motion for partial summary judgment, the Thatchers agreed to sell their house to the same buyers who made the offer in August 2003. The sale closed on April 29.

¶13 The Thatchers filed a motion for final summary judgment arguing they were entitled to a judgment awarding them the earnest money as liquidated damages for Salvo's default under the REPSA, damages from Salvo improperly filing the lis pendens and Notice of Interest, prejudgment interest and attorneys' fees and costs. Salvo claimed he was entitled to return of his earnest money deposit because, after good faith efforts, he was unable to obtain financing, and the Thatchers did not establish the necessary elements for slander of title damages. The court ruled that as a matter of law, Salvo was in default under the REPSA because he failed, without legal excuse, to purchase the property on August 29. The court awarded the Thatchers the $18,000 earnest money deposit, damages resulting from the filing of the lis pendens including the mortgage interest, real estate taxes, utilities and insurance the Thatchers paid on the property, prejudgment interest on the earnest money deposit and actual damages, and attorneys' fees and costs. Salvo appeals.

## ANALYSIS

¶14 Salvo argues the trial court erred in ruling the Thatchers were entitled to the earnest money deposit under the terms of the Default provision of the REPSA.

■■ ¶15 When reviewing a decision to grant summary judgment, this court engages in the same inquiry as the

[5] CP at 150.

trial court. *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998). Summary judgment is properly granted when the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A court's purpose in interpreting a contract is to ascertain the parties' intent. *U.S. Life Credit Life Ins. Co. v. Williams*, 129 Wn.2d 565, 569, 919 P.2d 594 (1996). "Absent disputed facts, the legal effect of a contract is a question of law to be reviewed de novo." *Litho Color, Inc. v. Pac. Employers Ins. Co.*, 98 Wn. App. 286, 295, 991 P.2d 638 (1999).

¶16 Salvo contends the trial court erred in concluding that the Thatchers were entitled to the earnest money as liquidated damages because under the Default provision of the REPSA he failed, "without legal excuse, to complete the purchase."[6] Salvo asserts he had a "legal excuse" for failing to close under the terms of the financing contingency in the REPSA.

¶17 The Default provision of the REPSA provides:

> Default. In the event the Buyer fails, without legal excuse, to complete the purchase of the Property, then the following provision . . . shall apply: i. Forfeiture of Earnest Money. That portion of the Earnest Money that does not exceed five percent (5%) of the Purchase Price shall be forfeited to the Seller as the sole and exclusive remedy available to Seller for such failure.[7]

In the Financing Addendum to the REPSA, the Thatchers and Salvo agreed the sale was contingent on Salvo obtaining a conventional purchase loan. The Financing Addendum required Salvo to apply for a purchase loan within five days of acceptance of the agreement.

■■ ¶18 The financing contingency is a condition precedent to the buyer's duty to perform under the REPSA. A buyer has a duty to act in good faith to attempt to obtain third-party financing when that is a condition of his duty to close. *See Weaver v. Fairbanks*, 10 Wn. App. 688, 691, 519

---

[6] CP at 194.

[7] CP at 194.

P.2d 1403 (1974) (When both parties accept a condition precedent that a buyer obtain a certain type of financing, they have an obligation to see that the condition is fulfilled.). Where a condition precedent is not performed within the time required, both parties' contractual duties are discharged. *See CHG Int'l, Inc. v. Robin Lee, Inc.*, 35 Wn. App. 512, 515, 667 P.2d 1127 (1983).

¶19 Here, Salvo timely applied for a purchase loan the day the Thatchers accepted his offer. It is undisputed that Salvo continued to pursue financing until he obtained loan approval and that he acted in good faith in doing so. But it is also undisputed that as of August 29, 2003, the closing day agreed to by the parties, Salvo did not yet have approval for a purchase loan. Therefore, the condition precedent to Salvo's duty to close under the REPSA was not fulfilled and the agreement expired. Because Salvo acted in good faith to obtain financing, his failure to close was excused and he was not in default under the REPSA.

¶20 The Thatchers contend Salvo failed, "without legal excuse," to complete the purchase of the property because he did not comply with the buyer notice provision in the Financing Addendum. The Financing Addendum includes two notice and termination provisions.

2. FINANCING DEADLINE/SELLER TERMINATION NOTICE. If Buyer has not within [30 days] after making application for a loan, given notice that Buyer has waived this financing contingency, then Seller may, at any time thereafter, elect to terminate this Agreement by giving 5 days notice. If, within 5 days of Seller's notice, Buyer does not waive this financing contingency by notice, this Agreement shall terminate.

3. EARNEST MONEY. If Buyer has not waived this financing contingency, and is unable to obtain financing after a good faith effort then, on Buyer's notice, this Agreement shall terminate and the Earnest Money shall be refunded to Buyer.[8]

These provisions allow both the Seller and the Buyer to terminate the REPSA before the closing date. The Thatch-

---

[8] CP at 195.

ers claim that Salvo had to give notice that he was unable to obtain financing under Paragraph 3, and because Salvo did not give notice when he was unable to close, Salvo was in default under the REPSA. The provisions of a contract must be construed together and each provision must be given effect. *Diamond "B" Constructors, Inc. v. Granite Falls Sch. Dist.*, 117 Wn. App. 157, 165, 70 P.3d 966 (2003). While Paragraph 3 allowed Salvo to give notice to unilaterally terminate the agreement before the closing date, Paragraph 3 does not by its terms supersede the terms of the REPSA that the purchase was contingent on Salvo obtaining a loan by the closing date. Salvo was not required to give notice of his intent to terminate under Paragraph 3 when he made good faith efforts to obtain financing but was unable to purchase the property on the closing date. Salvo's failure to close was excused by the financing contingency.

¶21 Both parties request attorneys' fees on appeal. RAP 18.1(a) allows this court to award a party its reasonable attorneys' fees if an applicable law grants a party the right to recover them. Under RCW 4.84.330, where a contract includes a provision that awards attorneys' fees and costs incurred to enforce the contract shall be awarded, the prevailing party is entitled to reasonable attorneys' fees and costs. The REPSA provides "[i]f Buyer or Seller institutes suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and expenses."[9] Because Salvo is the prevailing party, he is entitled to reasonable attorneys' fees and costs incurred on appeal.

## CONCLUSION

¶22 We reverse the trial court's decision to award the Thatchers the earnest money deposit under the Default provision of the REPSA and remand for further proceedings

---

[9] CP at 194.

consistent with this opinion. We grant Salvo's request for attorneys' fees on appeal after compliance with RAP 18.1.

GROSSE and KENNEDY, JJ., concur.