[No. 55055-1-I.   Division One.   April 17, 2006.]

EDWIN HERRING, *Individually and as Personal Representative, Appellant,* v. TEXACO, INC., ET AL., *Defendants,* TODD SHIPYARDS CORPORATION, *Respondent.*

*William J. Rutzick* and *Janet L. Rice* (of *Schroeter Goldmark & Bender*), for appellant.

*Walter E. Barton* (of *Karr Tuttle Campbell*) and *William H. Beaver, Jr.* (of *Intelius*), for respondent.

¶1 AGID, J. — In a bankruptcy action, a potential creditor is entitled to actual notice of the debtor's bankruptcy if the debtor can reasonably identify the potential creditor and his or her claim through the debtor's reasonably diligent efforts. This means that the debtor must have in his or her possession some specific information suggesting both the claim for which and the entity to which it would be liable. At

the time Todd Shipyards Corporation (Todd) filed for bankruptcy, it knew that members of the Asbestos Workers Union Local No. 7 (Local 7) who had worked at Todd could reasonably be expected to suffer asbestos-related diseases for which they would file tort claims. It therefore should have given Local 7 actual notice of Todd's bankruptcy. Because it did not, we reverse.

## FACTS

¶2 Roger Herring worked as an asbestos insulator from 1958 to the mid-1970s. He worked at Todd from time to time in the 1960s and early 1970s as an employee of Owens-Corning Fiberglas and Brower Corporation and was a member of Local 7. In 1986, Herring was diagnosed with pleural thickening caused by asbestos exposure. In 1989, he sued various manufacturers of asbestos-containing products, and the lawsuit settled.

¶3 In 2002, Herring was diagnosed with terminal cancer caused by asbestos exposure, and he filed this lawsuit. In 2003, he amended the complaint to include Todd as a defendant. Roger Herring died in August 2004, and the court substituted his brother, Edwin Herring, as the estate's personal representative.

¶4 Todd filed a voluntary petition for Chapter 11 reorganization on August 17, 1987. The court set the bankruptcy claims bar date (bar date) for filing proofs of claims as June 6, 1988. On March 16, 1988, Todd published notice of the bar date in several newspapers.

¶5 On March 19, 2004, Todd moved for summary judgment on Herring's claims. The trial court granted the motion, stating that "[p]laintiff's claims were discharged in bankruptcy." Herring appeals and argues that his claims were not discharged because he was not provided with adequate notice of Todd's bankruptcy.[1]

---

[1] When reviewing a decision granting summary judgment, we engage in the same inquiry as the trial court, and summary judgment is properly granted when the pleadings and affidavits show that there is no genuine issue of material fact

## ANALYSIS

¶6 In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 2d 865 (1950), the United States Supreme Court announced:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . .[2]

The reasonableness of the notice provided is determined by the totality of the circumstances.[3]

¶7 A court's determination of whether notice was reasonably calculated to notify a potential creditor of a bankruptcy proceeding focuses on whether the potential creditor was known or unknown.[4] Known creditors are those whose identity is reasonably ascertainable through a reasonably diligent search by the debtor filing for bankruptcy.[5] The debtor must do a diligent search of its own books and records, and efforts beyond a careful examination of these documents may not be required. However, "[s]ituations may arise when creditors are 'reasonably ascertainable,' although not identifiable through the debtor's books

---

and the moving party is entitled to judgment as a matter of law. *Thatcher v. Salvo*, 128 Wn. App. 579, 585, 116 P.3d 1019 (2005) (citing *Reynolds v. Hicks*, 134 Wn.2d 491, 495, 951 P.2d 761 (1998) and CR 56(c)).

[2] *Mullane*, 339 U.S. at 314.

[3] *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484, 108 S. Ct. 1340, 99 L. Ed. 2d 565 (1988) ("whether a particular method of notice is reasonable depends on the particular circumstances")..

[4] *Fogel v. Zell*, 221 F.3d 955, 963 (7th Cir. 2000).

[5] *See Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983) ("Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable."); *see also Tulsa*, 485 U.S. at 491; *Mullane*, 339 U.S. at 317-18.

and records."[6] All known creditors are entitled to have notice sent directly to them.

¶8 Unknown creditors, those whose names and addresses are not reasonably ascertainable, are not entitled to direct notice but may be notified by publication.[7] Notice by publication is also reasonable for parties whose interests are "either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to [the] knowledge of" the debtor.[8]

¶9 In sum, whether a creditor is known or unknown depends on whether the debtor can reasonably determine the creditor's identity and claim. The central issue here is whether Herring's union, Local 7, was a known or unknown creditor. If it was a known creditor, it was entitled to actual notice of the bankruptcy proceedings; if it was an unknown creditor, notice by publication was sufficient to satisfy due process, and the trial court properly barred Herring's claim against Todd.[9]

¶10 Herring argues that his identity and potential claim were reasonably ascertainable through Local 7 and a reasonably diligent effort by Todd to identify known creditors should have included notifying Local 7, whose members worked at Todd for various Todd subcontractors. Herring asserts that if Todd had notified Local 7, the union would have notified him. He also argues it is reasonable to infer that if Todd had asked the union to provide it with the names and addresses of its union members, or if it had asked its members to provide Todd with their names and addresses, the local would have done so and Todd would

---

[6] *Chemetron Corp. v. Jones*, 72 F.3d 341, 347 n.2 (3d Cir. 1995), *cert. denied*, 517 U.S. 1137 (1996).

[7] *Tulsa*, 485 U.S. at 490 ("For creditors who are not 'reasonably ascertainable,' publication notice can suffice.").

[8] *Mullane*, 339 U.S. at 317.

[9] State courts have concurrent jurisdiction with federal bankruptcy courts over all dischargability issues other than those concerning sections 523(a)(2), (4) or (6) of the Bankruptcy Code, Title 11 U.S.C., which are inapplicable here. *See In re Carter*, 38 B.R. 636, 638 n.5 (Bankr. D. Conn. 1984).

have had Herring's name and address. Thus, Todd could have reasonably ascertained Herring's identity and potential claim, and Herring was therefore entitled to actual notice.

¶11 In support, Herring submitted affidavits from the business agents who headed Local 7 during 1987-1989, who stated they were not notified of Todd's bankruptcy. One of those agents testified that "had the union been notified of the Todd bankruptcy, it would have notified its members by publication and/or during union meetings . . . ."

¶12 Herring also contends that a declaration by Todd's in-house counsel, filed in a different lawsuit in Texas, demonstrates that Todd thought a reasonably diligent search included notifying Herring's union local and Todd should be held to its self-imposed standard. In that declaration, counsel Michael Marsh stated, "Todd made diligent efforts to identify and notify potential creditors of its bankruptcy" including "notifying all unions whose members had worked at Todd Shipyards." However, Marsh modified his statement in this lawsuit to state that instead of notifying all unions *whose members had worked at Todd* (which would have included Herring's local), Todd notified "all unions *representing Todd's employees*" and "identified [Todd's] subcontractors as entities to [which] it would send actual notice."[10] Local 7 did not represent Todd's employees, but it did represent employees of Todd's subcontractors who worked at Todd.

¶13 Therefore, the issue we must decide is whether, under these circumstances, Todd was required to notify Herring's local union of its pending bankruptcy in order to afford Herring due process notification on his asbestos-related claims. In other words, did Todd discharge its legal responsibility to provide actual notice to those potential creditors whose identities and potential claims were rea-

---

[10] (Emphasis added.) Todd asserts that the change Marsh made in his declaration for this case *clarifies* the statement he made in the declaration in the Texas case. Because the change may also *contradict* Marsh's declaration in the Texas case, we leave it to the trial court on remand to determine which is the more persuasive interpretation.

sonably ascertainable through Todd's reasonably diligent efforts?

¶14 A search of Todd's own books and records would not have revealed Herring's name and address, although it would have included Todd's subcontractors and Local 7. Todd did personally notify all entities on its accounts receivable and payable registers, all entities that conducted business with Todd, and all unions that represented Todd employees. The Marsh declaration also states that Todd identified its subcontractors as entities to whom it would send actual notice.[11] But, under the unique circumstances of this case, these steps were not enough to constitute reasonable diligence. Because Todd knew of numerous asbestos-related claims that were and had been surfacing at the time of its bankruptcy, it was not reasonable to fail to notify a union that represented asbestos workers, a union known to Todd, whose members had been employed on its job sites. That Todd chose to notify all the unions that represented Todd, employees undermines its position in this case that it was not required to notify Herring's union. While it is true that the unions Todd notified were also known creditors with potential claims under collective bargaining agreements, they were not the only unions whose members Todd knew could have claims against the company. Keeping in mind *Mullane*'s standard for reasonable notice, what we require here is consistent with the law defining when a potential claim is reasonably ascertainable.

¶15 Herring asks us to decide whether his claim was reasonably ascertainable based on what might have happened had Todd notified Herring's union. But we need not do so here; that is a factual issue to be determined in the trial court. We need only decide that the information Todd had in its possession at the time of the bankruptcy proceedings was sufficient to require actual notice to Local 7. What more probably than not would have happened had Todd

---

[11] "[E]veryone who conducted business with Todd" and Todd's "subcontractors" are categories that would presumably include Herring's employer.

notified the union is for the trier of fact.[12] As summarized by the Fifth Circuit: "[I]n order for a claim to be reasonably ascertainable, the debtor must have in his possession, at the very least, some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable."[13] Todd had both. It was acutely aware of the burgeoning number of tort claims for asbestos-related injury. It knew Local 7 represented asbestos workers and that its subcontractors had employed those workers at Todd's job sites. That was sufficient information to require Todd to include Local 7 in the unions to which it sent notice of the bar date.

¶16 Todd relies on *In re Chicago, Rock Island & Pacific Railroad Co.*,[14] where a former railroad employee developed an asbestos-related disease allegedly caused by the railroad's negligence. The employee worked for the railroad from 1957 to 1979. The railroad filed for bankruptcy in 1975 and emerged in June 1984. The bar date was set as April 12, 1986, and the employee did not file his claim until November 1986.

¶17 The railroad employee argued that his claim was not time barred because he was not given personal notice of the bar date. The court found that because the railroad did not have any information in its possession that the individual employee had a claim, the employee was an unknown creditor entitled only to notice by publication. The court reasoned:

> Nonetheless, plaintiffs argue that the Rock Island knew that its employees had suffered asbestos exposure and therefore that the Rock Island knew of their potential claims. However, the court does not find, in the absence of any indication that a particular claim would ensue, that plaintiffs can be classified

---

[12] The fact finder may determine that notice to Local 7 would not have resulted in notice to Herring, in which case Todd would prevail. But it is not for the trial court on summary judgment—or this court on appeal—to resolve this factual issue.

[13] *La. Dep't of Envt. Quality v. Crystal Oil Co.*, 158 F.3d 291, 297 (5th Cir. 1998).

[14] 90 B.R. 329 (N.D. Ill. 1987).

as potential creditors. A trustee has no duty to give notice, other than publication, to non-creditors. . . .[15]

¶18 But *Rock Island* differs from our case because there was no entity, like Local 7, to which the railroad could have given notice. Notice to individual employees is not the issue here. Rather, Todd knew of an entity whose members had been exposed to and injured by asbestos on its job sites. Both the union and its potential claimants were reasonably ascertainable.

¶19 Todd also cites *Trump Taj Mahal Associates v. Alibraham*,[16] where the court found that a casino customer who was injured in a slip and fall and had submitted an incident report to the casino was an unknown creditor not entitled to actual notice of Trump Taj Mahal's bankruptcy. Citing the *Rock Island* case, the *Trump* court reasoned that the casino customer was one of several hundred potential claimants and, "although many people in [the customer's] position threaten to file suit against the Taj, only a nominal number, if any, actually bring suit."[17] In the absence of any specific information that reasonably suggested the individual customer would file a claim, the court found the customer's claim, "although conceivable, was speculative and conjectural."[18] But, as in *Rock Island*, the *Trump* court was again analyzing a situation in which there was no known entity to which the debtor could have given notice.

¶20 Both *Trump* and the *Rock Island* case raise concerns articulated in *Chemetron Corp. v. Jones*,[19] which are not present here. In *Chemetron*, the Third Circuit found that a group of former residents and occasional visitors to a toxic site contaminated by Chemetron were unknown claimants not entitled to actual notice of Chemetron's bankruptcy.

---

[15] *Rock Island*, 90 B.R. at 330-31.

[16] 156 B.R. 928 (Bankr. D.N.J. 1993), *aff'd sub nom. Trump Taj Mahal Assocs. v. O'Hara*, 1993 U.S. Dist. LEXIS 17827 (D.N.J. December 13, 1993).

[17] *Trump*, 156 B.R. at 940.

[18] *Trump*, 156 B.R. at 940.

[19] 72 F.3d 341 (3d Cir. 1995), *cert. denied*, 517 U.S. 1137 (1996).

The trial court had found that " 'Chemetron knew or should have known that it was reasonably foreseeable that it could suffer claims from individuals living near the [toxic site]' " and on that basis found the claimants were known creditors.[20] On appeal, the court rejected the trial court's " 'reasonably foreseeable' " test and instead held that the proper inquiry was whether the claimants and their claims were " 'reasonably ascertainable.' "[21]

¶21 Specifically, the court rejected the notion that Chemetron should be required to conduct a title search on all properties surrounding the toxic sites to locate all the people who might have lived in the area in the 20 years leading up to the bankruptcy proceedings. The court held that such a requirement would give rise to a "Scylla of causational difficulties and a Charybdis of practical concerns."[22] As for the difficulties in determining how great a geographic area the search would need to cover, or how broad the temporal dimension need be, the *Chemetron* court stated, "while we might be urged to bring these determinations under *Mullane's* 'reasonably calculated under the circumstances' umbrella, we hesitate to thrust the judiciary into a domain where decisions turn on rarely pellucid and often disputed scientific studies, requiring different varieties of technical expertise from case to case."[23]

¶22 And as for the practical difficulties involved, the court stated, "No title search could reveal the identity of claimants who merely visited houses in the vicinity of the sites at some point in the distant past, and we decline to impose any Orwellian monitoring requirements on Chemetron and similarly situated corporations."[24] The court summed up its discussion by stating, "Debtors cannot be required to provide actual notice to anyone who potentially could have been

---

[20] *Chemetron*, 72 F.3d at 347.

[21] *Chemetron*, 72 F.3d at 347.

[22] *Chemetron*, 72 F.3d at 347.

[23] *Chemetron*, 72 F.3d at 348 (quoting *Mullane*, 339 U.S. at 314).

[24] *Chemetron*, 72 F.3d at 348.

affected by their actions; such a requirement would completely vitiate the important goal of prompt and effectual administration and settlement of debtors' estates."[25]

¶23 As we stated above, none of these concerns is present in our case. Unlike the railroad in *Rock Island*, the casino in *Trump*, or the chemical company in *Chemetron*, we are not requiring Todd to search through records to pull out names of individuals who might bring a claim against the company. No scientific or practical conundrums would arise from notifying an asbestos workers' union. Because we need not be concerned with Scylla, Charybdis, or Orwell in our case, the practical problems underlying the decisions in *Rock Island*, *Trump*, and *Chemetron* do not mandate the same result here.

¶24 When courts have held that actual notice was required, they have focused on what information the debtors had in their possession in determining whether a potential claim was reasonably ascertainable. For example, in *Fogel v. Zell*,[26] the city of Denver had purchased a large amount of defective pipe. The Seventh Circuit held Denver was entitled to actual notice of the manufacturer's successor in interest's bankruptcy, even though the pipes did not burst until years after the bar date and Denver had not previously notified the debtor of its claim. The court reasoned, "the potential claimants were all purchasers of a product manufactured by the debtor's predecessor, and Denver in particular was a large purchaser."[27] Moreover, because "[o]ther pipe claimants had filed multimillion dollar claims" the court said the "suggestion that the trustee could not have discovered that Denver had purchased a large quantity of the defective pipe strikes us as risible."[28] In sum, the court determined that Denver's identity and potential claim

---

[25] *Chemetron*, 72 F.3d at 348.

[26] 221 F.3d 955 (7th Cir. 2000).

[27] *Fogel*, 221 F.3d at 963.

[28] *Fogel*, 221 F.3d at 963.

were reasonably ascertainable because the debtor need only look to its own books and records to determine that the city of Denver had purchased a large amount of pipe that at the time of the bankruptcy the debtor knew was potentially defective. Similarly here, Todd was aware of large numbers of asbestos claims arising from its operations at the time of its bankruptcy and of a union that represented asbestos workers on its job sites. As in *Fogel*, there was no reason the trustee would not have been aware of the claims and the union whose members were likely to have them.

¶25 In *Solow Building Co. v. ATC Associates*,[29] the court found that a building management group, Solow, was a known creditor because the debtor renovation company, ATC, had in its possession at the time of filing for bankruptcy letters from Solow threatening legal action for damages caused by their alleged improper asbestos abatement practices.[30] At the time of filing, ATC was also defending a lawsuit against the leaseholder of the Solow property, who hired ATC, concerning the same inadequate abatement practices. Thus, the court concluded, "ATC should have been alerted to the possibility that [a] claim might reasonably be filed against it."[31]

¶26 Applying the law to the facts of this case, Todd was aware that there were asbestos-related claims for which it may be liable. It was also aware that its subcontractors employed members of a union who had been exposed to asbestos on its job sites. Todd had in its possession specific

---

[29] 175 F. Supp. 2d 465, 473 (E.D.N.Y. 2001).

[30] One such letter stated:

"We demand that you desist from continuing these irregular, and what we are advised are, illegal procedures in the asbestos abatement and containment and *will hold you and your personnel supervising the work responsible for any damages or claims* by personnel in the building for your failure to properly control the asbestos in the Morgan premises."

*Solow*, 175 F. Supp. 2d at 472. We note there is little, if any, difference between these letters and those found to be insufficient to require notice in the *Trump* case. Both threatened future legal action but had not resulted in lawsuits at the time of the bankruptcy filing.

[31] *Solow*, 175 F. Supp. 2d at 473 (citing *In re Drexel Burnham Lambert Group, Inc.*, 151 B.R. 674 (Bankr. S.D.N.Y. 1993)).

information that reasonably suggested it would be liable to members of Local 7 for asbestos-related tort claims. Therefore, notice to the union was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[32]

¶27 In reaching our decision in this case, we have taken into account a number of circumstances not present in the cases on which the parties rely. These include the likelihood that anyone working under conditions similar to those Herring experienced would have grounds for an asbestos-related tort claim, the ease with which Todd could have notified Herring's union, and the uniquely rich source of information possessed by the union. Under the *Mullane* due process standard, we hold that in these specific circumstances an attempt to identify and notify workers like Herring through their union was required. Unlike *Chemetron*, our decision does not turn on disputed scientific studies addressing how foreseeable a claim may be under the circumstances of a specific case.[33] Nor is Todd required to provide actual notice to every person who could potentially have been affected by its actions.[34] Instead, the potential claimants and their claims here are reasonably ascertainable because Todd had in his possession "some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable."[35] Under these circumstances, requiring Todd to give notice to Local 7 balances the interests of potential creditors with "the important goal of prompt and effectual administration and settle-

---

[32] *Mullane*, 339 U.S. at 314 (citing *Milliken v. Meyer*, 311 U.S. 457, 61 S. Ct. 339, 85 L. Ed. 278 (1940); *Grannis v. Ordean*, 234 U.S. 385, 34 S. Ct. 779, 58 L. Ed. 1363 (1914); *Priest v. Trustees of Town of Las Vegas*, 232 U.S. 604, 34 S. Ct. 443, 58 L. Ed. 751 (1914); *Roller v. Holly*, 176 U.S. 398, 20 S. Ct. 410, 44 L. Ed. 520 (1900)).

[33] *Chemetron*, 72 F.3d at 348.

[34] *Chemetron*, 72 F.3d at 347-48.

[35] *Crystal Oil*, 158 F.3d at 297.

ment of debtors' estates" and establishes a workable standard upon which debtors and courts may rely.[36]

¶28 For the above reasons, we reverse the trial court's decision.

BECKER, J., concurs.

¶29 GROSSE, J. (dissenting) — In a bankruptcy action, a potential creditor is entitled to actual notice of the debtor's bankruptcy only if the potential creditor and his or her claim is reasonably ascertainable to the debtor through the debtor's reasonably diligent efforts. In order for a potential creditor's claim to be reasonably ascertainable to the debtor, the debtor must have in his or her possession some specific information that suggests both the claim for which the debtor may be liable and the entity to whom he or she would be liable. Because at the time Todd Shipyards Corporation (Todd) filed for bankruptcy it did not have in its possession some specific information that reasonably suggested it would be liable to Roger Herring for his asbestos related tort claims, Herring was an unknown creditor and publication notice was sufficient.

¶30 The majority's analysis is deficient in two major respects. First, the central issue here is whether *Herring* was a known or unknown creditor, not whether the *Asbestos Workers Union Local No. 7* (AWU Local No. 7) was a known or unknown creditor. After all, it is Herring who has filed the claim here, not the union.[37] Second, in holding that the union was entitled to actual notice because Todd knew that members of the AWU Local No. 7 "could reasonably be expected to suffer asbestos-related diseases for which they

---

[36] *Chemetron*, 72 F.3d at 348.

[37] Even if the issue turned on whether the union was a known creditor, there is nothing in the record to support the contention that the union was a known creditor because there is nothing in the record showing that the AWU Local No. 7 had any existing or potential claims against Todd. To the contrary, Todd points out the AWU Local No. 7 did not represent Todd employees, but employees of Todd subcontractors. Thus, they had no collective bargaining agreements or other contracts with Todd that could give rise to claims making them known creditors to Todd for purposes of bankruptcy.

would file tort claims,"[38] the majority applies the "reason-ably foreseeable" test rejected in *Chemetron* [39] and fails to faithfully apply the reasonably ascertainable test articu-lated in the case law.

¶31 Turning first to the facts, it is uncontested that a search of Todd's own books and records would not have revealed Herring's name and address. It is also uncontested that Todd, reasonably relying on the bankruptcy court's order setting out who was entitled to actual notice, person-ally notified all entities on its accounts receivable and payable registers, all entities that conducted business with Todd, and all unions that represented Todd employees.[40] The Marsh declaration also states that Todd identified its subcontractors as entities to whom it would send actual notice. "[E]veryone who conducted business with Todd" and Todd's "subcontractors" are categories that would presum-ably include Herring's employer.

¶32 These steps are enough under these circumstances to constitute reasonable diligence on the part of Todd, and this court should not impose the additional requirement that Todd provide notice to a noncreditor (the union) in the hope that it would identify a potential creditor (Herring) whose identity and potential claim were unknown to Todd.[41] Such a requirement is inconsistent with existing case law defining when a potential claim is reasonably ascertainable. As the case law holds, the appropriate test of whether a potential claim is reasonably ascertainable is determined based on the information the debtor has in its possession at the time of the bankruptcy proceedings and

---

[38] Majority at 481.

[39] *Chemetron v. Jones*, 72 F.3d 341, 347 (3d Cir. 1995).

[40] Decl. of Michael Marsh ("Todd made diligent efforts to identify and notify potential creditors of its bankruptcy. Such efforts included notifying individuals on its accounts receivable and accounts payable registers, notifying everyone who conducted business with Todd, and notifying all unions representing Todd's employees. In addition, I recall that Todd Shipyards identified its subcontractors as entities to whom I would send actual notice.").

[41] That Todd chose to notify the unions that represented Todd employees does not undermine Todd's position in this case that it was not required to notify Herring's union. This is because the unions Todd notified were known creditor's to Todd, with potential claims under collective bargaining agreements.

not on a factual finding as to what might have happened had the debtor notified a noncreditor. As summarized by the Fifth Circuit: "[I]n order for a claim to be reasonably ascertainable, the debtor must have in his possession, at the very least, some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable."[42]

¶33 Furthermore, decisions such as these should not turn on often disputed scientific studies addressing how *foreseeable* a claim may be under the circumstances of a specific case.[43] Nor should a debtor be required to provide actual notice to anyone who potentially could have been affected by their actions.[44] Instead the test is whether the potential claimant and his claim are reasonably *ascertainable*, meaning the debtor has in his possession "some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable."[45] Such a rule, when properly applied, balances the interests of potential creditors with "the important goal of prompt and effectual administration and settlement of debtors' estates" and establishes a workable standard upon which debtors and courts may rely.[46]

¶34 Here, the majority fails to properly apply the reasonably ascertainable test. The majority's analysis turns on its finding that Todd "knew that members of the Asbestos Workers Union Local No. 7 (Local 7) who had worked at Todd *could reasonably be expected* to suffer asbestos-related diseases for which they *would* file tort claims."[47] This "could reasonably be expected"[48] test applied by the majority is no

---

[42] *In re Crystal Oil*, 158 F.3d 291, 297 (5th Cir. 1998).

[43] *Chemetron*, 72 F.3d at 348.

[44] *Chemetron*, 72 F.3d at 347-48.

[45] *Crystal Oil*, 158 F.3d at 297.

[46] *Chemetron*, 72 F.3d at 348.

[47] Majority at 481 (emphasis added).

[48] Majority at 481.

different than the "reasonably foreseeable"[49] test rejected in *Chemetron* and is not the "reasonably ascertainable" test which the majority purports to apply.

¶35 While Todd may have been generally aware that there were asbestos related claims for which it may be liable, the undisputed facts of this case reveal that it possessed no specific information of Herring's identity or his exposure to asbestos. Todd thus did not have in its possession specific information that reasonably suggested it would be liable to Herring for his asbestos related tort claims. Therefore, Herring was an unknown creditor and notice by publication was sufficient.

¶36 For the above reasons, I respectfully dissent.

Review granted at 159 Wn.2d 1004 (2007).

---

[49] *Chemetron*, 72 F.3d at 347-48.