**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| CHICAGO TITLE COMPANY OF WASHINGTON, a Washington Insurance Corporation, | No. 84868-2-I |
| Plaintiff/Interpleader, | DIVISION ONE |
| | UNPUBLISHED OPINION |
| v. | |
| BILLY J. SPINKS, as his separate estate, | |
| Appellant, | |
| and | |
| MOLLY JONES, | |
| Respondent. | |

MANN, J. — Billy Spinks entered into a residential purchase and sale agreement (PSA) to sell a Bellingham home to Molly Jones. The PSA required Jones deposit $15,000 in earnest money. The PSA also included a financing addendum making the sale contingent on Jones obtaining a loan, and provided that Jones could terminate the PSA before closing if, after a good-faith effort, financing was unavailable. After Jones

failed to obtain financing before the closing date due to unresolved potential mold issues in the home, Jones terminated the PSA.

Spinks appeals the trial court's decision on summary judgment requiring the remaining earnest money be returned to Jones. Because Jones made a good-faith effort to obtain financing, and substantially complied with the PSA, we affirm.[1]

I

Spinks and Jones executed a PSA on November 16, 2021, for a home located in Bellingham, Washington (property). The PSA set the selling price as $640,000 and set the closing date as December 22, 2021. The PSA required Jones to deposit a $15,000 earnest money payment with Chicago Title Company. The PSA provided that if Jones failed, without legal excuse, to complete the purchase of the property, then the earnest money "shall be forfeited to the Seller as the sole and exclusive remedy available to Seller."

The PSA included a financing addendum which provided for a refund of the earnest money if financing was unavailable.

> If Buyer has not waived the Financing Contingency, and is unable to obtain financing by Closing after a good faith effort then, on Buyer's notice, this Agreement shall terminate. The Earnest Money shall be refunded to Buyer after lender confirms in writing (a) the date Buyer's loan application for the Property was made, including a copy of the loan estimate that was provided to Buyer; (b) that Buyer possessed sufficient funds to close (e.g. down payment, closing costs, etc.); and (c) the reasons Buyer was unable to obtain financing by Closing.

---

[1] This matter originated as a complaint for interpleader filed by Chicago Title Company of Washington (Chicago Title) after Spinks and Jones disputed who had the right to the earnest money deposited under the PSA. Chicago Title is not a party to this appeal. Spinks and Jones appear before us pro se.

Prior to executing the PSA, Jones obtained preapproval for a loan from Peoples Bank. The preapproval letter stated that any subsequent loan commitment would be subject to underwriter approval and contingent on several requirements including the "satisfactory completion of all underwriting requirements and conditions."

The PSA also included an inspection addendum. On November 22, 2021, Jones hired BNB Home Inspections to inspect the property. The inspection revealed potential mold in several areas of the interior of the home. The inspection did not include detecting the actual presence of mold and specified that if a qualified opinion was desired the appropriate services should be used.

Consistent with the inspection addendum, on November 24, 2021, Jones submitted an Inspection Response for Form 35R (Form 35R) to Spinks. Jones asked Spinks to have the rodent feces removed and have the "microbial growth and mold in [the] basement treated and cleaned by a professional." Jones also requested a reduction in the purchase price to $630,000. Spinks rejected Jones's request for repairs, but offered to reduce the purchase price to $634,000. Jones agreed. Jones then hired a professional cleaning service to clean the property.

In response to the Form 35R, on December 9, 2021, Peoples Bank notified Jones that if the underwriter deemed the property to have health or safety issues, there may be more required to approve the loan. That same day, Jones received a mortgage loan commitment from Peoples Bank. The loan commitment was contingent upon the lender receiving a letter from the home inspector stating that the items for repair, including the potential mold, had been repaired. That same day Jones had BNB Home Inspectors revisit the property. The inspector noted that the potential mold he had

originally observed was still present.  Two days later, on December 11, 2021, the lender responded that the home inspector's report did not satisfy their health and safety concerns.

In response, on December 14, 2021, Jones hired a property restoration company to inspect the property and prepare an estimate for repairs.  The estimate came back at nearly $15,000 for all repairs, about $9,000 of which was estimated for extensive hazardous material remediation and water extraction and remediation.  That same day, Jones sent Spinks a notice of termination of the PSA and an authorization to disburse earnest money.

Because Jones and Spinks each claimed they were entitled to the earnest money, Chicago Title deposited the earnest money with the court and filed a complaint for interpleader on February 2, 2022.  On September 9, 2022, the trial court discharged Chicago Title from its obligations and awarded its attorney fees and costs to be paid from the earnest money deposit.  Then, after cross motions for summary judgment, the trial court ordered the remaining earnest money be returned to Jones.  After unsuccessfully seeking reconsideration, Spinks appeals.

II

Spinks contends the trial court erred in refunding the remaining earnest money to Jones because Jones breached the PSA by failing, without "a legal reason," to complete the purchase.  We disagree.

We review an order granting summary judgment de novo.  Ebel v. Fairwood Park II Homeowners' Ass'n, 136 Wn. App. 787, 792, 150 P.3d 1163 (2007).  Summary judgment is proper only when there are no genuine issues of material fact and the

-4-

moving party is entitled to judgment as a matter of law. Ebel, 136 Wn. App. at 792 (citing Tri-City Constr. Council, Inc. v. Westfall, 127 Wn. App. 669, 674, 112 P.3d 558 (2005)). We view all facts and reasonable inferences in the light most favorable to the nonmoving party. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

A

Jones and Spinks agreed in the PSA financing addendum that the sale was contingent on Jones obtaining a loan. The financing addendum provided:

> If Buyer has not waived the Financing Contingency, <u>and is unable to obtain financing by Closing after a good faith effort then, on Buyer's notice, this Agreement shall terminate</u>.

(Emphasis added). This provision allowed Jones to terminate the PSA before the closing date.

The financing contingency is a condition precedent to Jones's duty to perform under the PSA. "A buyer has a duty to act in good faith to attempt to obtain third-party financing when that is a condition of [their] duty to close." Salvo v. Thatcher, 128 Wn. App. 579, 585, 116 P.3d 1019 (2005). In Salvo, the buyer acted in good faith to obtain financing by timely applying for a loan and continuing to pursue loan approval but was unable to do so by the closing date; thus, the condition precedent of his duty to close was unfulfilled. 128 Wn. App. at 586. The court concluded that because Salvo attempted to obtain financing in good faith, his failure to close was excused. Salvo, 128 Wn. App. at 586.

Here, it is undisputed that Jones did not waive the financing contingency. Jones obtained loan preapproval before the PSA was signed. After signing the PSA, Jones

received a mortgage loan estimate from the lender. Following the inspection and discovery of potential mold, the loan was conditionally approved requiring a letter from the inspector stating that the potential mold was treated by the appropriate professionals. Jones continued to pursue financing by hiring professional cleaners and seeking an estimate for mold remediation work. There is no evidence in the record to suggest that Jones breached the duty of good faith. Further, Spinks cites no authority suggesting that the duty to pursue financing in good faith obligated Jones to spend almost $15,000 to make repairs to Spinks's property before she could obtain a loan. There is thus no genuine issue of material fact as to whether Jones acted in good faith to obtain financing and the condition precedent to her duty to close was unfulfilled.

B

Spinks argues that Jones cannot rely on the financing addendum because the lender did not send a letter denying the loan and explaining why.[2] The financing addendum states:

> The Earnest Money shall be refunded to Buyer after lender confirms in writing (a) the date Buyer's loan application for the Property was made, including a copy of the loan estimate that was provided to Buyer; (b) that Buyer possessed sufficient funds to close (e.g. down payment, closing costs, etc.); and (c) the reasons Buyer was unable to obtain financing by Closing. If Seller terminates this Agreement, the Earnest Money shall be refunded without need for such confirmation.

---

[2] Spinks also argues that under the Fair Credit Reporting Act, 15 U.S.C. § 1681m, it was mandatory that the lender provide a specific writing, a loan denial letter. When a creditor takes "adverse action" against a consumer such as denying a credit application, there are certain notice and disclosure requirements such as providing the consumer with the reason for denial. 15 U.S.C. §§ 1681a(k), 1681m, 1691(d)(6). Here, the lender did not commence an adverse action against Jones. Instead, the underwriter put a condition on the loan approval based on health and safety issues related to the state of the property—obtaining a letter from the inspector stating items from Form 35R were properly completed.

The provision required the lender to confirm certain facts in writing before the earnest money is refunded to Jones. "The general rule with respect to compliance with the terms of a bilateral contract is not strict compliance, but substantial compliance." DC Farms, LLC v. Conagra Foods Lamb Weston, Inc., 179 Wn. App. 205, 220, 317 P.3d 543 (2014) (citing 15 RICHARD A. LORD & SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 44:52, at 217 (4th ed.2000)).

Here, the lender confirmed Jones's preapproval and loan estimate in writing. The lender also confirmed in writing the mortgage loan commitment which conditioned approval upon receipt of an inspector's letter that the potential mold was treated by a professional. It is undisputed that the potential mold was not treated or remediated by Spinks. It is also undisputed that there is no letter from the inspector confirming the items in Form 35R were acceptably completed. While the lender did not send a formal letter of denial, there is no genuine issue of material fact that the lender notified Jones, in writing, that the loan would not be approved before the scheduled closing date without the required remediation.

Jones made a good-faith effort to obtain financing as required by the financing agreement and substantially complied with the requirements for establishing financing was unavailable. The trial court did not err in ordering the remaining earnest money be returned to Jones.[3]

We affirm.

---

[3] Spinks requests costs incurred on appeal. Because Spinks is not the substantially prevailing party, he is not entitled to recover costs on appeal. RAP 14.2.

_____
　　　　　　　　　　　　　Mann, J.

WE CONCUR:


_____　　　_____
Coburn, J.　　　　　　　　　　　　Brennan, J